**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

QASEM HASHIMI, on behalf of himself and all others similarly situated,

Plaintiff,

v.

MOVADO GROUP, INC., a New York Corporation, and DOES 1-50, inclusive,

Defendants.

Case No.: 25cv2044 DMS (JAC)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

**[ECF No. 9]**

Before the Court is Defendant Movado Group, Inc.'s motion to dismiss Plaintiff Qasem Hashimi's Class Action Complaint. (Mot., ECF No. 9-1.) This matter is fully briefed, (*see* Opp'n, ECF No. 11; Reply, ECF No. 16), and suitable for decision without oral argument, (ECF No. 18). For the following reasons, the Court grants in part and denies in part Defendant's motion to dismiss.

## I. BACKGROUND

The Court assumes the Complaint's allegations are true while resolving the motion. Defendant markets, distributes, and sells watches, jewelry, and other items at its mainline and outlet stores. (Compl., ECF No. 1, ¶ 55.) Plaintiff purchased a Veturi watch from Defendant's outlet store in Carlsbad, California ("Outlet Store") on April 9, 2025. (*Id.* ¶

42.) The watch bore an "original" price of approximately $599 and an actual sales price of $249; Plaintiff paid an after-tax total of $268.30. (*Id.*) Because of "Defendant's signage and labeling," Plaintiff "reasonably believed" he received a "substantial bargain" on a mainline watch, and this belief was material to his purchasing decision. (*Id.* ¶¶ 43, 45.) He would not have purchased the watch or paid the price he did had he known the advertised discounts were false. (*Id.* ¶ 44.)

The Outlet Store's display cases use "List Price Plaques" which show a "list" price (the "original" price) immediately below an actual sales price of the watches. (*Id.* ¶¶ 21, 37, 43.) In some cases, the List Price Plaques refer to a group of watches and, therefore, the list and sale prices are displayed as ranges. (*Id.* ¶ 19.) The Outlet Store does not disclose when any watch was last offered at the list prices, if ever. (*Id.* ¶ 20.) Additionally, the List Price Plaques do not include any comparison to Defendant's mainline stores or to third-party retailers. (*Id.* ¶ 22.) Thus, using the list and sales prices on the same List Price Plaques creates an "unmistakable impression that the advertised discounts reflect reductions" from "bona fide, in-store, former selling price[s]." (*Id.*) In other words, Defendant allegedly fabricates inflated "original" prices, described as list prices, then claims to offer its merchandise at a "steep discount." (*See id.* ¶¶ 4, 19.) Defendant allegedly uses this false advertising scheme for its "apparel, accessories, sportswear, leather goods, and related products" at its outlet stores nationwide, "regardless of geography or date of observation." (*Id.* ¶¶ 3, 20, 37.)

Plaintiff's counsel alleges he investigated Defendant's pricing practices at its outlet stores between March 25 and July 10, 2025. (*Id.* ¶ 36.) "[N]early all items are accompanied by a pricing placard showing the actual sales prices immediately above a 'List' or 'List Price' reference price." (*Id.* ¶ 37.) During the investigation, "[h]undreds of products were observed as continuously 'on sale,'" but were at no point offered at the list price. (*See id.* ¶¶ 37, 38.) Thus, Plaintiff believes Defendant's outlet merchandise is not, as a general practice, offered at the list prices. (*Id.* ¶ 37.) Further, Plaintiff's counsel was unable to locate the watches from the Outlet Store on Defendant's mainline website. (*Id.*

¶ 24.) Plaintiff also is informed and believes the merchandise offered on Defendant's mainline website is not offered on its outlet website, and vice versa. (*Id.*) Thus, Plaintiff suspects at least some of the items available at Defendant's outlet website and stores are "specifically manufactured or designated for outlet sale" (including different materials, construction methods, and design specifications than the mainline counterparts), rather than being "discounted overstock or past-season goods" from Defendant's mainline stores. (*See id.* ¶¶ 23, 24, 39, 23 n.21.) The investigation confirms the list prices attached to Defendant's "outlet products—including those purchased by Plaintiff—do not reflect genuine, bona fide former prices," but "function solely as artificial anchors designed to create the illusion of a discount." (*Id.* ¶ 38.)

In sum, Plaintiff alleges Defendant's products are rarely, if ever, offered for sale at the "original" ("list") prices and, thus, "serve no function other than to create a false sense of urgency and value, deceiving consumers into believing that they are purchasing high-quality goods at a substantial markdown." (*Id.* ¶ 28.) "In reality, consumers are . . . purchasing lower-quality, [made-for-outlet] goods—often older, discontinued, or overstock items—for which the reference prices are outdated, unverified, or no longer reflect any actual or recent sales in [Defendant's] mainline retail channels." (*Id.*) Defendant purportedly knows its reference price advertising is "false, deceptive, misleading, unconscionable, and unlawful." (*Id.* ¶ 57.) Defendant conceals from consumers the true nature and quality of its outlet store products and advertising practices to "provoke" Plaintiff and class members to purchase the products sold in its outlet stores. (*Id.* ¶¶ 58, 59.)

Plaintiff alleges violations of California's (1) False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (2) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and (3) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (*Id.* at 24–30.) Plaintiff brings this action on behalf of himself and "all other similarly situated" class members ("Class"). (*Id.* ¶ 61.) The Class is defined as:

> [a]ll persons within the State of California, who, within the applicable statute of limitations preceding the filing of this action . . . , purchased from a Movado Company Store one or more products at discounts from an advertised reference price and who have not received a refund or credit for their purchase(s).

(*Id.*) Plaintiff seeks damages and injunctive relief. (Compl., Prayer for Relief.) Defendant moves to dismiss the entire Complaint under Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). (*See generally* Mot.)

## II. LEGAL STANDARDS

### A. Standing

Article III of the Constitution requires courts to adjudicate only actual cases or controversies. *See* U.S. Const. art. III, § 2, cl. 1. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). A party may "move to dismiss a claim based on lack of subject matter jurisdiction, including the absence of standing," under Rule 12(b)(1). *Sywula v. Teleport Mobility, Inc.*, 652 F. Supp. 3d 1195, 1208 (S.D. Cal. 2023) (citing *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010)).

### B. Sufficiency of Pleading

Under Rule 12(b)(6), a party may move to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation modified).

## III. DISCUSSION

### A. Standing

1. <u>Article III Standing–Products Not Purchased by Plaintiff</u>

Defendant argues Plaintiff lacks Article III standing to "bring claims for any products he did not purchase." (Mot. 21.) To the Court's knowledge, there is no controlling authority on whether a plaintiff has standing to bring claims on behalf of others for products that are similar to the product plaintiff purchased. *See Anderberg v. Hain Celestial Grp., Inc.*, 652 F. Supp. 3d 1232, 1240 (S.D. Cal. 2023) (noting no controlling authority). In this vacuum,

> "[c]ourts . . . have adopted three diverging approaches for analyzing standing to pursue claims for nonpurchased products." Under the first approach, the court dismisses all claims based upon unpurchased products. Under the second "middle ground" approach, the court concludes that substantial

> similarity between purchased and unpurchased products is sufficient to satisfy Article III requirements as to claims based upon unpurchased products. "In applying the 'substantial similarity' test, Courts look to a series of factors including whether the challenged products are of the same kind, comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." Finally, under the third approach, the court concludes that as long as a plaintiff has Article III standing to sue for the products that he/she purchased, any questions regarding standing to sue for unpurchased products should be left for resolution at the class certification stage.

*Itzhak v. Keurig Dr Pepper Inc.*, No. 25-cv-00235, 2025 WL 2020029, at *6 (C.D. Cal. June 11, 2025) (citations omitted). Defendant argues Plaintiff lacks standing to assert claims based on products he did not buy, even if the products at issue purportedly bear the "same labeling statements" or "similar commonalities." (*See* Mot. 21.) Defendant also argues Plaintiff's allegations do not show substantial similarity, should the Court adopt the second approach. (*See* Reply 11.) Conversely, Plaintiff contends this issue is best resolved at the class certification stage, rather than on a motion to dismiss. (*See* Opp'n 21.) Defendant concedes "some courts delay resolution of such issues until the class certification stage . . . but no controlling Ninth Circuit authority requires this Court to do so." (Reply 10–11.) In line with other courts in this Circuit, the Court will "defer ruling on the issue until the class certification stage." *See, e.g.*, *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010).

2. <u>Standing to Seek Injunctive Relief</u>

Injunctive relief is unavailable "absent a showing of . . . real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111. Here, Plaintiff seeks an injunction "enjoining Defendant from continuing the unlawful practices" alleged in the Complaint. (Compl., Prayer for Relief, ¶ E.)

The Court finds Plaintiff has standing to seek injunctive relief. Defendant argues Plaintiff failed to show he regularly shops at Defendant's stores or actually desired to purchase from the retailer and, thus, lacks standing to seek injunctive relief. (Mot. 23–24 (citing *Scheibe v. Esupplements, LLC*, 681 F. Supp. 3d 1101, 1116 (S.D. Cal. 2023)).)

However, "in some cases, the threat of future harm may be the consumer's plausible allegations that [he] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [he] would like to." *Davidson*, 889 F.3d at 969–70. Here, Plaintiff alleges he desires to continuously shop at Defendant's outlet stores because he "likes the brand and the watches and the other jewelry that is offered"; however, he "cannot be certain that Defendant will have corrected [its] deceptive pricing scheme." (Compl. ¶ 49.) Further, he alleges he "may again, by mistake, purchase a falsely discounted product at one of [Defendant's] outlet stores under the reasonable, but false, impression that Defendant corrected the scheme." (*Id.* ¶ 50.) The Court is "required at this stage of the proceedings to presume the truth of [Plaintiff's] allegations and to construe all of the allegations in [his] favor." *Davidson*, 889 F.3d at 970–71. Thus, Plaintiff's allegations sufficiently establish standing for injunctive relief. The Court **DENIES** Defendant's motion to dismiss on standing grounds.

**B. Sufficiency of Pleading**

1. <u>Actionable Misrepresentation</u>

Defendant argues, as an initial matter, Plaintiff has not pled an "actionable representation" under the FAL, CLRA, or UCL. (Mot. 8.) According to Defendant, Plaintiff's allegations—that he relied on an "original" price and an "actual sales price," (Compl. ¶¶ 42–43)—are insufficient because "pricing about the product alone cannot constitute a[n] [actionable] representation or statement about the product," (Mot. 9). Plaintiff argues that the two-tier signage is an actionable representation. (Opp'n 3–4.)

The Court finds Plaintiff sufficiently alleged an actionable representation. The Complaint alleges Defendant uses throughout its outlet stores standardized point-of-sale List Price Plaques, which display a lower sale price immediately above a higher list price. (*See id.* at 3, 7.) Further, the List Price Plaques do not contain a comparison to Defendant's mainline stores or to third-party retailers or disclose when the items were last offered at the list prices. (*See id.* at 3.) Thus, the Complaint's allegations go beyond simply a price, but instead allege Defendant used two prices, one described as a list price and one as a sale

price, which together create a false sense of a bargain. On these facts and at this early stage, the Court finds the alleged former price comparison is an actionable representation. *See Knapp v. Art.com, Inc.*, No. 16-CV-00768, 2016 WL 3268995, at *4 (N.D. Cal. June 15, 2016).

2. Rule 9(b) Pleading Requirements

While the elements for claims brought under the FAL, CLRA, and UCL differ, "in all three claims a plaintiff 'must allege [a defendant's] alleged pricing scheme with particularity.'" *Nguyen v. Lovesac Co.*, No. 24-CV-01293, 2025 WL 950511, at *4 (E.D. Cal. Mar. 28, 2025) (citation omitted). "This includes allegations that the Defendants made a false representation about a product that Plaintiffs purchased." *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 823 (N.D. Cal. 2017). A plaintiff must also "allege with specificity what products they purchased, on what statements they relied in making those purchases, and why those statements were false or misleading." *Nguyen*, 2025 WL 950511, at *4 (citations omitted).

Here, Defendant argues Plaintiff failed to sufficiently plead what representation he relied upon, or how and why he was deceived. (Mot. 9–10.) Specifically, Defendant argues Plaintiff failed to allege whether (1) the price he relied upon was designated as a list price; (2) the prices he viewed were displayed on the List Price Plaques; and (3) he viewed and relied upon other numbers, symbols, or language (such us "formerly") near the two numbers. (*Id.* at 9.) Plaintiff argues the Compliant satisfies Rule 9(b)'s heightened pleading standard. (Opp'n 3–5.)

The Court agrees with Plaintiff. Plaintiff contends Defendant (the "who") sold Plaintiff a Veturi watch (the "what"), at Defendant's Outlet Store (the "where") on April 9, 2025 (the "when"). (Compl. ¶ 42); *see Calcagno v. Kipling Apparel Corp.*, No. 23-CV-2247, 2024 WL 3261205, at *5 (S.D. Cal. July 1, 2024). Plaintiff alleges "nearly all" of Defendant's outlet products are accompanied by List Price Plaques, which show the sales prices immediately above list prices (the "original" prices). (*See* Compl. ¶¶ 21, 37, 43.) The Complaint includes multiple photos of Defendant's display cases using these List Price

Plaques. (*See id.* at 7.) Plaintiff also alleges the investigation showed "[h]undreds of products . . . as continuously 'on sale,'" but never offered at the list price, (*see id.* ¶¶ 37, 38), and the List Price Plaques create an "unmistakable impression that the advertised discounts reflect reductions" from "bona fide, in-store, former selling price[s]," (*id.* ¶ 22). Specific to Plaintiff's purchase, his Veturi watch allegedly bore an "original" price of approximately $599 and an actual sales price of $249. (*Id.* ¶ 42.) It was because of "Defendant's signage and labeling" that Plaintiff "reasonably believed" he received a "substantial bargain" on a mainline watch, and this belief was material to his purchasing decision (the "how" and "why"). (*Id.* ¶¶ 43, 45.)

Defendant takes issue with Plaintiff's failure to explicitly allege his Venturi watch was accompanied by a List Price Plaque that bore the prices he purportedly relied upon. (*See* Mot. 9.) Conversely, Plaintiff correctly argues "it is reasonable to infer" from his allegations "that the watch Plaintiff purchased was subject to the same uniform signage system." (Opp'n 5 (citation omitted).) "[T]he Court is not required to view a single allegation in isolation." *Shimono v. Harbor Freight Tools USA, Inc.*, No. EDCV161052, 2016 WL 6238483, at *6 (C.D. Cal. Oct. 24, 2016). When viewing the Complaint as a whole, the Court finds Plaintiff "offered detailed factual allegations supporting his general claim that [D]efendant's advertising scheme is misleading, that he purchased a product advertised pursuant to said scheme, and that he did so in reliance upon the misleading pricing scheme." *Id.* For these reasons, the Court finds the Complaint identifies "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964.

Next, Defendant argues Plaintiff failed to allege facts showing his Veturi watch had not been previously sold at the list price at Defendant's stores; in fact, "Plaintiff alleges no facts at all regarding the Veturi watch's price on any date other than the date of his alleged purchase on April 9, 2025." (Mot. 12–13.) Defendant further argues Plaintiff's counsel's "purported investigation . . . say[s] nothing about the former price of the Veturi watch in

question, much less during the relevant 3-month period prior to Plaintiff's alleged purchase." (*Id.* at 13.) However, Plaintiff need not "plead enough investigatory facts to '*prove* that [the] items were never offered at the "original" or "regular" price during the relevant period;' it is sufficient that the investigation 'plausibly suggest that they were not.'" *Gonzalez v. Childrens Place, Inc.*, No. SACV22-0816, 2024 WL 5413173, at *7 (C.D. Cal. Nov. 21, 2024) (emphasis in original) (citing *Azimpour v. Sears, Roebuck & Co.*, No. 15-CV-2798, 2017 WL 1496255, at *8 (S.D. Cal. Apr. 26, 2017)), *reconsideration denied*, No. SACV 22-0816, 2025 WL 3190128 (C.D. Cal. Oct. 31, 2025). Here, Plaintiff alleges Defendant's "entire pricing scheme, not just the prices at the time of [his] purchase, is deceptive." *Real v. Y.M.I. Jeanswear, Inc.*, No. EDCV 17-0870, 2017 WL 11675686, at *5 (C.D. Cal. Sept. 1, 2017). Plaintiff also alleges during his counsel's investigation, which started a couple weeks before Plaintiff's purchase, "[h]undreds of products were observed as continuously 'on sale,'" but were at no point offered at the list price. (*See* Compl. ¶¶ 36–38, 42.) "The sample of [Plaintiff's] investigative findings, combined with the allegations specific to [Plaintiff's] experience, raise enough facts to state plausible UCL, FAL, and CLRA claims that sound in fraud." *Gonzalez*, 2024 WL 5413173, at *7.

3. <u>Reasonable Consumer Test</u>

Whether a business practice is deceptive or misleading under California's FAL, CLRA, and UCL is governed by the "reasonable consumer" test. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). "Under the reasonable consumer standard, one must show that members of the public are likely to be deceived." *Real*, 2017 WL 11675686, at *3 (citation omitted). "Because whether a practice is deceptive or misleading is generally a question of fact, the 'reasonable consumer' test is satisfied at the pleading stage if a plaintiff plausibly alleges 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *James v. Chocmod USA Inc.*, 773 F. Supp. 3d 945, 955 (E.D. Cal. 2025).

Defendant argues Plaintiff failed to plead facts showing that list prices are "understood by ordinary, reasonable consumers as 'former prices.'" (Mot. 12.) Defendant further argues, "[a]s federal regulations explain, ordinary consumers associate 'List Prices' with the manufacturer's suggested retail price and interpret them as reflecting prices in the general trade area, not as former prices at which the good in question was previously sold." (*Id.* at 11–12 (citing 16 C.F.R. § 233.3(a); *id.* § 233.3(d)).) However, "[g]ranting a motion to dismiss is appropriate only in 'the rare situation' where 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" *Coe v. Gen. Mills, Inc.*, No. 15-CV-05112, 2016 WL 4208287, at *5 (N.D. Cal. Aug. 10, 2016) (citing *Williams*, 552 F.3d at 939).

Here, Plaintiff's theory does not fail as a matter of law. Federal regulations provide in part that "[m]any members of the purchasing public believe that a manufacturer's list price, or suggested retail price, is the price at which an article is generally sold." 16 C.F.R. § 233.3(a). While federal regulations assert "many" members of the public view a list price as a suggested retail price, that does not necessarily mean Plaintiff is unable to prove "members of the public are likely to be deceived." *Real*, 2017 WL 11675686, at *3 (citation omitted). Further, under California Code of Regulations ("CCR"), "former price" as used in section 17501, "*includes but is not limited to* the following words and phrases when used in connection with advertised prices; 'formerly--,' 'regularly--,' 'usually--,' 'originally--,' 'reduced from__________,' 'was __________ now__________,' '__________% off.'" 4 C.C.R. § 1301 (emphasis added). Thus, Plaintiff's theory is not barred by the CCR's non-exhaustive list. Nor is the "purported plain meaning" of a "list price" so obvious that it would be impossible for a reasonable consumer to be misled by Defendant's alleged pricing scheme. *See Calcagno*, 2024 WL 3261205, at *6 (citation omitted).

In addition, Plaintiff alleges the products' prices are displayed on List Price Plaques, whereon the list price (the "original" price) is immediately below an actual sales price of the watches. (Compl. ¶¶ 21, 37, 43.) The List Price Plaques do not include any comparison

to Defendant's mainline stores or to third-party retailers. (*Id.* ¶ 22.) The Complaint also alleges Defendant "does not disclose when any product was last offered at that price" and Plaintiff counsel's "multi-month investigation observed products continuously offered at discounted prices and never at the full 'original' price." (Opp'n 7.) Based on these allegations, reasonable consumers could "understand and rely on [Defendant's] two-tier 'List Price' plaques as conveying a markdown from a former in-store price." (*See id.*)

Defendant's contention that list prices cannot be perceived as former prices "is a factual question about the likelihood of consumer confusion which is generally inappropriate for a motion to dismiss." *Calcagno*, 2024 WL 3261205, at *6 (citation omitted). And because Plaintiff offers factual allegations explaining why he and other consumers believe Defendant's list price reflects the product's former price, the Court finds Plaintiff sufficiently alleged a deceptive practice under the reasonable consumer test.[1]

4. <u>FAL Claim</u>

The FAL "prohibits any 'unfair, deceptive, untrue, or misleading advertising.'" *Gonzalez*, 2024 WL 5413173, at *6 (C.D. Cal. Nov. 21, 2024) (citing Cal. Bus. & Prof. Code § 17500). "This statute makes it unlawful for a business to disseminate any statement 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" *Id.* (citation omitted). The FAL further provides that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the

---

[1] Defendant argues Plaintiff fails to establish a "deceptive comparative pricing theory." (Mot. 13–16.) "For comparative prices, courts apply the reasonable consumer test according to whether the product is 'exclusive' or 'non-exclusive.'" *Calcagno*, 2024 WL 3261205, at *4; *see also Krantz v. Old Copper Co., Inc.*, 794 F. Supp. 3d 724, 740 (C.D. Cal. 2025). Here, Plaintiff represents he "does not bring a competitor price-comparison theory"—only a "former-price / illusory-discount scheme." (Opp'n 9.) Based on this representation, Plaintiff will not proceed on a price-comparison theory; thus, the Court declines to address whether such a theory is sufficiently pled.

advertisement." *Id.* (citing Cal. Bus. & Prof. Code § 17501). "The statute has been interpreted broadly to encompass not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.*

*a. Knowledge of Untrue/Misleading Statements (Section 17500)*

Defendant argues Plaintiff failed to sufficiently allege it made statements that were "known, or which by the exercise of reasonable care should be known, to be untrue or misleading" as required by section 17500 of the FAL. (Mot. 18–19); Cal. Bus. & Prof. Code § 17500. Plaintiff argues from the structure of the scheme alleged and duration of that scheme, "it is reasonable to infer that [Defendant] knew—or at minimum should have known through the exercise of reasonable care—that its price advertising was untrue or misleading." (Opp'n 15.) The Court finds Plaintiff met his burden. "Defendant designed and implemented the pricing scheme in question," and thus, "[i]t plausibly follows that Defendant knew whether the listed comparative prices or former prices were false or misleading." *Calcagno*, 2024 WL 3261205, at *8. "This is sufficient to establish knowledge, which need only be [pled] generally." *Id.*

*b. Former Prices (Section 17501)*

Next, Defendant argues "Plaintiff alleges no well-pled facts showing why reasonable consumers would think Company Stores' alleged 'List Prices' are former prices." (Mot. 19.) However, as explained above, Plaintiff sufficiently alleged a reasonable consumer could interpret Defendant's list prices as former prices. (*See supra* III.B.3.) For these reasons, the Court **DENIES** Defendant's motion to dismiss Plaintiff's FAL claim.

5. <u>CLRA Claim</u>

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." *Gonzalez*, 2024 WL 5413173, at *6 (citing Cal. Civ. Code § 1770). California Civil Code section 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised," *Safransky v. Fossil Grp., Inc.*, No. 17cv1865, 2018 WL 1726620, at *9 (S.D. Cal. Apr. 9, 2018) (quoting Cal. Civ. Code § 1770(a)(9)), while section

1770(a)(13) prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions," *id.* (quoting Cal. Civ. Code § 1770(a)(13)). Plaintiff alleges violations of both subdivisions. (Compl. ¶ 97.)

*a. Section 1770(a)(9) & (a)(13)*

Defendant argues "because Plaintiff does not allege that [Defendant] changed any representation made to Plaintiff or required Plaintiff to pay a price higher than he had previously been quoted, he cannot recover under subsection (a)(9)." (Mot. 19–20 (citations omitted).) Defendant also contends "Plaintiff has not alleged facts showing [Defendant] made any 'false or misleading statements of fact' regarding 'price reductions,' as the 'List Prices' are not references to former prices," and "therefore fails to allege a violation of subsection (a)(13)." (*Id.* at 20.)

Plaintiff has sufficiently pled his CLRA claim under both subdivisions. He alleges he is a consumer who purchased a watch from Defendant and that Defendant's pricing practices are misleading because the List Price Plaques falsely create the impression that products have been marked down, when they were never sold at the list price. (Compl. ¶¶ 22, 37, 38, 42.) These allegations are sufficient—especially when accepting Plaintiff's factual allegations as true and construing the pleadings in the light most favorable to him—to establish Defendant "[a]dvertis[ed] goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9), or made "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions," *id.* § 1770(a)(13). "[T]hat is all that must be alleged at the pleading stage." *Evans v. DSW, Inc.*, No. CV 16–3791, 2017 WL 7058233, at *10 (C.D. Cal. Feb. 2, 2017).

*b. Prelitigation Notice*

"Plaintiffs intending to bring a CLRA cause of action seeking damages must notify defendants at least 30 days in advance and give them that amount of time to correct the alleged wrongs." *Waller v. Hewlett-Packard Co.*, No. 11CV0454, 2011 WL 6325972, at *5 (S.D. Cal. Dec. 16, 2011). However, the CLRA expressly allows for a plaintiff who "originally seeks only injunctive relief under § 1750, for which no notice is required," to

later send a notice letter and amend his complaint to seek *damages* under the statute. *Id.* (citing Cal. Civ. Code § 1782(d)).

Here, Plaintiff filed his action on August 8, 2025, (*see generally* Compl.), and served Defendant a CLRA notice letter on the same day, (*id.* ¶ 99). The Complaint alleges "[i]f Defendant fails to adequately respond within thirty (30) days of service, Plaintiff will seek damages and attorneys' fees under the CLRA, in addition to the equitable relief already sought pursuant to [California Civil Code section] 1782(d)." (*Id.*) Plaintiff also alleges he "expressly reserves the right to pursue such damages and fees and hereby incorporates that *request into this Complaint* with the intention—and to the maximum extent permitted by law—of *obviating the need for any further amendment* following expiration of the statutory notice period." (*Id.* (emphases added).) In the Prayer for Relief, Plaintiff seeks "damages and attorneys' fees under the CLRA . . . contingent upon Defendant's failure to cure the violations within thirty (30) days of service of Plaintiff's notice pursuant to California Civil Code § 1782(a)." (Compl., Prayer for Relief, ¶ C.) Plaintiff has not filed an amended Complaint to date.

Defendant argues Plaintiff's request for damages under the CLRA should be dismissed with prejudice because Plaintiff failed to comply with the statute's prelitigation notice requirements. (Mot. 20.) Conversely, Plaintiff argues that the "notice letter . . . expressly incorporated into the Complaint a request for CLRA damages and attorneys' fees to take effect upon expiration of the statutory notice period," and "acknowledges that a formal amendment may be required depending on the Court's interpretation of the [section] 1782 compliance at the pleading stage." (Opp'n 19–20; *see also* Compl. ¶ 99.) Plaintiff contends this practice is "designed to conserve judicial resources and avoid unnecessary amendment practice." (Opp'n 20.) Thus, Plaintiff argues this is "at most, a technical sequencing issue—not a statutory violation—and the CLRA does not authorize dismissal (let alone dismissal with prejudice) on that basis." (*Id.*)

In *Morgan v. AT&T Wireless Servs., Inc.*, the plaintiff's complaint "made clear . . . that no damages were sought under the CLRA," and warned the defendant that failure to

correct, repair, replace or otherwise rectify the alleged deceptive practices "will result in Plaintiff amending this Complaint to seek damages for such deceptive practices pursuant to" section 1782. 99 Cal. Rptr. 3d 768, 774 (Ct. App. 2009). The pleading in *Morgan* is in line with the CLRA. However, here, the allegations and Prayer for Relief in the Complaint clearly express an intent to pursue damages under the CLRA. It is also clear Plaintiff intends for his original Complaint to automatically seek damages upon the expiration of the 30-day period set by section 1782. Section 1782 provides that "[n]ot less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), *the consumer may amend his or her complaint without leave of court to include a request for damages*." Cal. Civ. Code § 1782(d) (emphasis added). The statute does not authorize a Complaint to include allegations seeking damages under the CLRA to take effect upon expiration of the notice period. Thus, the Court finds the Complaint cannot automatically incorporate Plaintiff's request for damages upon expiration of the 30-day period. Although Plaintiff has not complied with the CLRA's prelitigation notice requirement, the Court declines to dismiss the CLRA claim with prejudice. "Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements." *Bitton v. Gencor Nutrientes, Inc.*, 654 F. App'x 358, 362 (9th Cir. 2016) (quoting *Morgan*, 99 Cal. Rptr. 3d at 789). Plaintiff's CLRA claim for damages (including attorney fees, *Benson v. S. Cal. Auto Sales, Inc.*, 192 Cal. Rptr. 3d 67, 76 (Ct. App. 2015)) is **DISMISSED *without* prejudice**. Plaintiff's claim for injunctive relief under § 1750 will stand.

6. <u>UCL Claim</u>

Lastly, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Gonzalez*, 2024 WL 5413173, at *6 (citing Cal. Bus. & Prof. Code § 17200). "The UCL provides a separate theory of liability under the 'unlawful,' 'unfair,' or 'fraudulent' prongs." *Id.* (citations omitted). Plaintiff alleges Defendant violated all three prongs of the UCL. (Compl. 24–27.)

Defendant argues Plaintiff failed to sufficiently allege the "unlawful" and "unfair" prongs. (Mot. 16–17.)

*a. Unlawful Prong*

Under the unlawful prong, the UCL "'borrows' violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)). Defendant argues that because Plaintiff's FAL and CLRA claims are insufficiently pled, Plaintiff's "unlawful" UCL claim also fails. (Mot. 18.) However, because the Court finds the FAL claim and CLRA claim for injunctive relief are sufficient, Plaintiff has stated a claim under the UCL's "unlawful" prong.

Plaintiff also asserts an "unlawful" prong claim based on a predicate violation of the Federal Tort Claims Act ("FTCA"), 15 U.S.C. § 52(a). (Compl. ¶ 79.) Defendant argues the UCL claim via this theory fails because § 52(a) "only applies to false advertisements of 'food, drugs, devices, services, or cosmetics,'" and Defendant's products fall outside the scope of the statute's coverage. (Mot. 18 (citing 15 U.S.C. § 52(a)).) Plaintiff does not contend in his Opposition that Defendant's products fall under § 52(a); but, instead, argues the Complaint "pleads facts tracking the [Federal Trade Commission's] former-price guidance" ("FTC Guides")—namely, 16 C.F.R. § 233.1(a)–(b)—"which condemns the use of fictitious, inflated 'former' prices to create false bargains." (Opp'n 17.) Plaintiff further argues Ninth Circuit courts "recognize that allegations tracking the FTC Guides may support UCL unlawful-prong claims at the pleading stage," (*id.* (citing *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017))), and Plaintiff alleges "exactly the conduct the FTC Guides condemn: fictitious reference prices, perpetual 'sale' pricing, and the absence of bona fide former prices," (*id.*).

First, because Plaintiff does not address Defendant's argument pertaining to § 52(a) in his Opposition, he concedes it. *Kenney v. Bank of Am., N.A.*, No. 2:25-CV-02726, 2025 WL 2117409, at *10 (C.D. Cal. July 14, 2025). Accordingly, the Court finds Plaintiff

cannot proceed on his UCL "unfair" claim under the theory that Defendant violated § 52(a) of the FTCA. As to the alleged FTC Guides violation, "although the FTC Guides do not provide a private civil right of action, '[v]irtually any state, federal or local law can serve as the predicate for an action under [the UCL].'" *Rubenstein*, 687 F. App'x at 567 (citation omitted). Here, Plaintiff alleges a § 233.1(a) violation (i.e., "where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one"), and these allegations are sufficient to state a claim under the UCL. *See id.* As explained above, Plaintiff alleges Defendant orchestrated a false advertising scheme by using the List Price Plaques and creating an "unmistakable impression that the advertised discounts reflect reductions" from "bona fide, in-store, former selling price[s]." (Compl. ¶ 22.) Accordingly, the Court **DISMISSES with prejudice** Plaintiff's UCL "unlawful" claim to the extent Plaintiff argues Defendant violated § 52(a) of the FTCA, and **DENIES** Defendant's motion to dismiss the UCL claim under Plaintiff's remaining theories.

*b. Unfair Prong*

Under the "unfairness" prong, courts can consider: (1) "whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law'"; (2) whether the practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or (3) "whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer.'" *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (citations omitted).

The Court finds Plaintiff has plausibly alleged a claim under "unfair" prong. Plaintiff's "unfair" UCL claim is tethered to statutory and regulatory provisions: the CLRA, FAL, and FTC Guides, which the Court has found are sufficiently pled. Further, Plaintiff alleges that Defendant's actions are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" because "Defendant engaged in

misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom 'sale' prices." (Compl. ¶ 74.) These allegations plausibly allege a violation of the UCL's "unfair" prong. Defendant's motion to dismiss the "unfair" prong claim is therefore **DENIED**.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss. Specifically, the Court **DISMISSES** Plaintiff's CLRA claim for damages **without prejudice** and **DISMISSES with prejudice** Plaintiff's UCL "unlawful" claim to the extent Plaintiff argues Defendant violated § 52(a) of the FTCA. The remainder of Defendant's motion is **DENIED**. Defendant will answer the Complaint **within fourteen (14) days** of the entry of this Order. If Plaintiff wishes to pursue a CLRA claim for damages, he must file an Amended Complaint.

**IT IS SO ORDERED.**

Dated: August 10, 2026

Hon. Dana M. Sabraw
United States District Judge